Taylor, C.J.
In this case, we must decide whether a contractual limitations period in an insurance policy is tolled from the time a claim is made until the insurance company denies the claim and, if it is not, whether the limitations period may be avoided under the doctrines of waiver or estoppel. Consistently with long-established contract law, we hold that there is no automatic tolling when a claim is filed unless the contract so provides. Traditional contract doctrines such as waiver and estoppel can apply when the facts support them. However, in the present case plaintiff has not shown that she relied on any misconduct by defendant; therefore, defendant cannot be estopped from *194 applying the limitations period to plaintiffs claim. Because the Court of Appeals held to the contrary we reverse the Court of Appeals and remand for entry of summary disposition in favor of defendant.
I. FACTS AND PROCEEDINGS
The policy at issue in this case is one for underinsured motorist (UIM) coverage. These policies are not mandated by statute; individuals contract for such coverage voluntarily. When an insured is injured by a tortfeasor motorist whose own policy is insufficient to cover all of the insured’s damages, the insured can seek coverage from his or her UIM policy for damages that exceed the tortfeasor’s policy limits. Thus, the insured generally must first determine how much of his or her damages will be covered by the tortfeasor and enter into a settlement with the tortfeasor, and then seek further payment from his or her UIM provider for the balance.
In this case, plaintiff was injured in an automobile accident on November 29, 2001. The policy under which she was covered included UIM coverage. However, it contained an endorsement that provided: “No claimant may bring a legal action against the company more than one year after the date of the accident.” The policy also had a clause prohibiting the insured from settling without defendant’s written consent and stating that defendant “shall be obligated” to respond within 30 days to the insured’s request to settle.
On May 10, 2002, plaintiffs attorney notified defendant by mail that plaintiff had an underinsured motorist claim, acknowledging that the policy had a limitations period that would expire on November 29, 2002. Defendant responded that it needed answers to interrogatories (concerning collectibility of the underinsured motorist) before it could give permission to settle and *195 that defendant’s claims representative needed to review the medical records. The claims representative’s letter indicated that after the medical records were reviewed, “I will be getting back in touch with you.”
On August 2, 2002, plaintiffs attorney sent another letter, asking for a decision regarding consent to settle “so that I can determine if I need to sue Farm Bureau or not.” On August 16, he sent a third letter stating that he intended to “commence the process of negotiating the UIM claim” as soon as he received written permission to settle. The claims representative sent written permission to settle for $20,000.[1] The record indicates no further action by either party before November 29, 2002, when the period of limitations expired. On December 10, 2002, defendant sent plaintiff a letter indicating that the one-year limitations period had expired and that defendant would no longer consider the UIM claim.
Plaintiff filed this action five months later. Defendant moved for summary disposition under MCR 2.116(C)(8) (failure to state a claim) and 2.116(C)(10) (no material question of fact). The trial court denied defendant’s motion and granted summary disposition to plaintiff, holding that (1) the one-year period was unreasonable and thus unenforceable as a matter of law, (2) defendant was estopped from asserting the limitation because of its dilatory conduct, (3) pursuant to Tom Thomas Org, Inc v Reliance Ins Co, 396 Mich 588; 242 NW2d 396 (1976), the limitations period was *196 tolled by plaintiffs May 10, 2002, letter until defendant denied the claim, and (4) the limitations period was too ambiguous to enforce.
On appeal in the Court of Appeals, the application for leave was first held in abeyance for this Court’s decision in Rory v Continental Ins Co, 473 Mich 457; 703 NW2d 23 (2005). After the Rory decision, the Court of Appeals affirmed, holding that the trial court had correctly ruled that the contractual limitations period was tolled by plaintiffs May 10, 2002, letter to defendant until the denial of plaintiffs claim on December 10, 2002. McDonald v Farm Bureau Ins Co, unpublished opinion per curiam of the Court of Appeals, issued August 24, 2006 (Docket No. 259168). In so holding, the panel relied on the decision in West v Farm Bureau Gen Ins Co of Michigan (On Remand), 272 Mich App 58, 65-67; 723 NW2d 589 (2006), which held that multiple recent decisions of this Court limiting the doctrine of judicial tolling were inapplicable to insurance contract claims and that Rory should be applied prospectively only. McDonald, supra at 2. Because this single issue was dispositive, the panel did not address the issues of reasonableness, contractual ambiguity, or estoppel. Id.
This Court granted defendant’s application for leave to appeal, directing the parties to include among the issues to be briefed (1) whether a contractual limitations period may be avoided on the basis of the doctrines of waiver or estoppel and (2) whether the one-year limitations period contained in the insurance policy is tolled from the time a claim is made until the insurance company denies the claim. 477 Mich 996 (2007).
II. STANDARD OF REVIEW
This Court reviews de novo the trial court’s decision to grant or deny summary disposition. Rory, supra at *197 464. Questions involving the proper interpretation of a contract or the legal effect of a contractual clause are also reviewed de novo. Id. When reviewing a grant of equitable relief, an appellate court will set aside a trial court’s factual findings only if they are clearly erroneous, but whether equitable relief is proper under those facts is a question of law that an appellate court reviews de novo. Blackhawk Dev Corp v Village of Dexter, 473 Mich 33, 40; 700 NW2d 364 (2005).
III. JUDICIAL TOLLING
This Court has addressed the issue of tolling the limitations periods of insurance policies several times in the recent past. In Devillers v Auto Club Ins Ass’n, 473 Mich 562, 564; 702 NW2d 539 (2005), this Court held that the “one-year-back” limitation provided for in MCL 500.3145(1) for recovering no-fault personal protection insurance benefits could not be automatically tolled because that was contrary to the express language of the statute. In so holding, we overruled Lewis v Detroit Automobile Inter-Ins Exch, 426 Mich 93; 393 NW2d 167 (1986), which had applied to the statutory limitations period the “judicial tolling” doctrine that Tom Thomas had used in the context of optional insurance contracts. Devillers, supra at 564. We noted in Devillers that Tom Thomas departed from the well-established legal principle that courts cannot rewrite the parties’ contracts if the terms are expressly stated. Id. at 567. The Tom Thomas Court declined to apply traditional contract doctrines such as waiver and estoppel because it concluded that “[w]aiver and estoppel analysis results in considerable uncertainty concerning the ‘reasonableness’ of the time remaining for suit.” Tom Thomas, supra at 597 n 10 (citation omitted). Without explaining why this would create a problem, *198 the Court simply disregarded the one-year contractual provision because some of that time would undoubtedly be taken up in processing the claim. Instead, it declared that the “appropriate resolution” was “to toll the running of the limitation from the time the insured gives notice until the insurer formally denies liability.” Id. at 596-597. Because the action had been filed less than 12 months after the insurer denied liability, the Court held that it was timely, even though more than one year had passed since notice of the claim was given. Id. The dissent noted that the insured “was guilty of sleeping on its bargained-for rights” for more than six months of the elapsed time and that, under standard contract law, a one-year period was a one-year period. Id. at 601 (Lindemer, J. dissenting).
Devillers set forth this reasoning and explained how the Tom Thomas tolling doctrine was expanded from contractual limitations periods to the statutory limitations period provided by MCL 500.3145(1) in the context of automobile no-fault statutes. Reversing caselaw that had adopted the doctrine, the Court noted that it was “unable to perceive any sound policy basis for the adoption of a tolling mechanism with respect to the one-year-back rule.” Devillers, supra at 583. The Court expressly agreed with the dissents in the cases reversed and in Tom Thomas, stating: “Statutory — or contractual — language must be enforced according to its plain meaning, and cannot be revised or amended to harmonize with the prevailing policy whims of members of this Court.” Id. at 582. The Court concluded by holding that the statutory limitations period should be enforced as written by the Legislature.
Similarly, in Rory, supra at 468, this Court emphasized that “unambiguous contracts are not open to judicial construction and must be enforced as written.” *199 Judicial conclusions regarding the “reasonableness” of unambiguous contractual provisions cannot be used to evade enforcement of the contract as written. Rory expressly overruled Tom Thomas and its progeny. Id. at 470. Rory also concluded that the one-year limitation was not contrary to public policy, noting that “the Legislature has assigned the responsibility of evaluating the ‘reasonableness’ of an insurance contract to ... the Commissioner of Insurance” and that because the commissioner had approved the policy at issue in that case, which included a one-year limitation, the courts were not free to determine de novo whether the policy was reasonable. Id. at 475-476.
In the present case, the Court of Appeals affirmed the trial court’s grant of summary disposition in favor of plaintiff solely on the basis of its conclusion that the limitations period was tolled pursuant to Tom Thomas. In so doing, the Court cited, but then expressly ignored, language in Devillers, supra at 582. Instead, the Court preferred to follow its own precedent, West, which stated that Devillers concerned “statutory claims brought pursuant to the no-fault act” and so was “not instructive” in a case that did not involve that act, even while the West panel acknowledged that Devillers had held that Tom Thomas was incorrectly decided. McDonald, supra at 2; West, supra at 64-65. The Court of Appeals also followed West’s determination that Rory applies prospectively only and ignored the substance of Rory’s analysis that concluded that Tom Thomas was incorrectly decided. McDonald, supra at 2.
The Court of Appeals correctly noted that our case-law has already declared that Tom Thomas was incorrectly decided. Just as courts are not to rewrite the express language of statutes, it has long been the law in this state that courts are not to rewrite the express *200 terms of contracts. See, e.g., Mann v Pere Marquette R Co, 135 Mich 210, 219; 97 NW 721 (1903), citing Baltimore & O S R Co v Voigt, 176 US 498, 504; 20 S Ct 385; 44 L Ed 560 (1900) (“[T]he usual and most important function of courts of justice is rather to maintain and enforce contracts, than to enable parties thereto to escape from their obligation on the pretext of public policy....”). Rather than blindly following West's questionable disregard for Devillers's clear statement, the Court of Appeals should have, at least, sought conflict-panel resolution of the question. MCR 7.215(J).
As was made clear in Devillers, supra at 567, and Rory, supra at 470, Tom Thomas disregarded long-established caselaw requiring that we read unambiguous contract provisions as they are written. By allowing automatic tolling, it made a nullity of express contract language, and parties were unable to rely on unambiguous contract provisions. The reasoning we applied in Devillers, precluding automatic tolling of statutory limitations periods, applies equally to similar contractual limitations periods.
Moreover, we are not as convinced as Justice KELLY that judicial tolling of these claims “promotes the quick resolution of insurance claims outside the courts.” Post at 213. Tolling removes from both sides the incentive to speedily resolve the claim: until a decision is made to deny a claim, the plaintiff may have little basis for a claim. Certainly, tolling muddies what rights and responsibilities exist under the contract, given that the express terms of the contract no longer control in that situation. We believe the better position is for parties to determine their own contractual provisions and then bear the responsibility of enforcing them as written.
We reiterate that Rory overruled Tom Thomas and its progeny and conclude that express limitations peri *201 ods in optional insurance contracts are not automatically tolled as a matter of law by filing a claim. Under the plain language of the contract, plaintiff was required to bring an action against defendant by November 29, 2002, unless she can point to a legally supported reason why that deadline was not effective.
Plaintiff argues that, since our decision in Rory, public policy has changed to preclude limitations provisions shorter than three years and, therefore, that this provision should not be enforced because it is against public policy. Specifically, plaintiff points to a “Notice and Order of Prohibition” issued by the Office of Financial and Insurance Services (OFIS)[2] on December 16, 2005, prohibiting uninsured motorist benefits policies with limitations periods of less than three years. However, the “Notice and Order” also expressly states that it does not prohibit insurers from continuing to use policies that were legally in use before December 16, 2005.[3] Moreover, the general rule is that contracts are interpreted in accordance with the law in effect at the time of their formation. See, e.g., Byjelich v John Hancock Mut Life Ins Co, 324 Mich 54, 61; 36 NW2d 212 (1949). Thus, the one-year limitation was valid at the time the parties entered into the contract. Accordingly, we hold that the trial court erred in granting summary disposition to plaintiff on this basis.
In her dissent, Justice KELLY asserts that the OFIS order should persuade us to invalidate unambiguous contracts like the one at issue here on the ground that they are against good public policy. However, we are of the view that our role is fundamentally different from *202 that of OFIS. OFIS determines whether an insurance contract is valid. If it is, it is then the responsibility of this Court to enforce the valid contract as written. The OFIS order expressly left in force contracts already in effect. While the Court is, of course, free to adopt a policy that would apply a blanket invalidation to countless existing insurance contracts, the majority of this Court is of the view that we follow the law established by the lawgiver. That is, when a statute is at issue, the law is established by the Legislature, and we are compelled to follow it as written. Similarly, when a contract is at issue, the law we must follow is the unambiguous terms established by the parties to the contract. Justice KELLY consistently has preferred a more aggressive and invasive role for the Court, particularly when construing contracts and statutes. The rule that she wishes is for the Court to serve as an ombudsman, rewriting contracts and statutes in the name of “public policy” whenever it appears that the plain terms of the text work some perceived inequity. See, e.g., Herweyer v Clark Hwy Services, Inc, 455 Mich 14; 564 NW2d 857 (1997), overruled by Rory, supra at 488-489; Husted v Auto-Owners Ins Co, 459 Mich 500, 517; 591 NW2d 642 (1999) (Kelly, J., dissenting); Van v Zahorik, 460 Mich 320, 342; 597 NW2d 15 (1999) (Kelly, J., dissenting); Nawrocki v Macomb Co Rd Comm, 463 Mich 143, 186; 615 NW2d 702 (2000) (Kelly, J., concurring in part and dissenting in part); Koontz v Ameritech Services, Inc, 466 Mich 304, 325; 645 NW2d 34 (2002) (Kelly, J., dissenting); Karaczewski v Farbman Stein & Co, 478 Mich 28, 46; 732 NW2d 56 (2007) (Kelly, J., dissenting). Yet this approach replaces the rule of law by the rule of men, which is the very peril we believe that courts are expected to stand against. We will continue to do so.
*203 IV TERMS OF THE CONTRACT
In the interests of judicial efficiency, because we hold that the one-year contractual limitations period was not automatically tolled by filing a claim, we address the trial court’s other bases for granting summary disposition. The trial court held that the contract was ambiguous because it did not define “legal action,” and the trial court was persuaded by plaintiffs assertion that she thought contacting an attorney, who then sent a letter to defendant, constituted “legal action.” We disagree. The phrase “a legal action” undisputedly means “a lawsuit.” CAM Constr v Lake Edgewood Condo Ass’n, 465 Mich 549, 554-555; 640 NW2d 256 (2002); see also United States v El-Ghazali, 142 Fed Appendix 44, 46 (CA 3, 2005) (citing numerous cases and dictionaries and concluding that “[t]he widespread use of the word ‘action’ in both the civil and criminal context refutes [the defendant’s] argument that there is disagreement among reasonable people as to the meaning of ‘legal actions’ ”); Black’s Law Dictionary (6th ed) (defining “action” by noting that the “[t]erm in its usual legal sense means a lawsuit brought in a court”). Even if plaintiff herself thought that contacting an attorney was a “legal action,” her attorney, once contacted, would have understood that “legal action” is synonymous with “lawsuit.” See, e.g., Michigan Millers Mut Ins Co v Bronson Plating Co, 445 Mich 558, 568; 519 NW2d 864 (1994), overruled in part on other grounds by Wilkie v Auto-Owners Ins Co, 469 Mich 41 (2003). Therefore, we conclude that the trial court erred in ruling that the phrase “legal action” was ambiguous.
The trial court also held that the one-year time limit was unreasonable, concluding that the present case was directly analogous to Rory. We agree that the facts of Rory are squarely on point with this case, and for the *204 same reason that we reversed the Court of Appeals decision in Rory, we decline to rewrite the parties’ contract here.
V EQUITABLE RELIEF
The trial court also held that defendant was estopped from seeking enforcement of the one-year limitations provision because of its “conduct in the case at bar which resulted in numerous delays.” Defendant concedes that the traditional contract doctrines of waiver and estoppel are still viable and that nothing in Rory or Devillers changed basic contract law. Equitable tolling, unlike judicial tolling, has a legal basis arising out of our common law, and it may be invoked when traditional equitable reasons compel such a result.[4] However, defendant argues that neither doctrine should be applied under the present facts. We agree with defendant.
“A waiver is a voluntary relinquishment of a known right.” Dahrooge v Rochester German Ins Co, 177 Mich 442, 451-452; 143 NW 608 (1913). Neither party disputes that waiver is inapplicable here because defendant did not voluntarily relinquish its right to enforce the one-year time limit. For equitable estoppel to apply, plaintiff must establish that (1) defendant’s acts or representations induced plaintiff to believe that the limitations period clause would not be enforced, (2) plaintiff justifiably relied on this belief, and (3) she was prejudiced as a result of her reliance on her belief that *205 the clause would not be enforced. See Grosse Pointe Park v Michigan Muni Liability & Prop Pool, 473 Mich 188, 204, 224; 702 NW2d 106 (2005) (opinions by Cavanagh, J., and Young, J.); Dahrooge, supra at 452. The trial court’s factual finding that defendant caused delays is insufficient to grant estoppel because there is no evidence that plaintiff relied on anything defendant did or said. To the contrary, plaintiffs attorney clearly expressed an awareness of the cutoff date, acknowledging it in his May 10, 2002, letter. He also pursued the claim in August when, not having heard from the claims representative for some time, he sent a letter stating that he needed to know what the settlement decision was so he could “determine if I need to sue Farm Bureau or not.” Defendant responded by sending written confirmation of the settlement decision.
Finally, plaintiffs assertion that she relied on Tom Thomas and delayed bringing suit because she thought the one-year limitation was tolled is not a reason to estop defendant, because defendant’s “acts or representations” did not induce plaintiffs delay. Grosse Pointe Park, supra at 204, 224. Therefore, we find that waiver or estoppel did not operate to entitle plaintiff to summary disposition.
VI. RETROACTIVITY
Plaintiff asserts that if Tom Thomas is overruled, we should apply our holding prospectively only because her counsel, relying on Tom Thomas, believed that the limitations period was tolled by his filing the claim. We need not reach the issue in this case, however. Although the general rule is that our decisions are given full retroactive effect, this Court has indicated that prospective application may be warranted if “injustice might result from full retroactivity.” Pohutski v City of Allen *206 Park, 465 Mich 675, 696; 641 NW2d 219 (2002). In this case, when plaintiffs counsel notified defendant of the claim, he expressly acknowledged that the limitations period would expire on November 29, 2002. Therefore, counsel’s post hoc assertions of reliance are belied by his own communications to defendant that indicated he did not expect tolling to occur. Because plaintiffs attorney did not rely on Tom Thomas, no injustice would result from applying our decision to plaintiff. Accordingly, even if reliance on Tom Thomas justified prospective application in general, the facts specifically presented in this case do not warrant that application.
VII. CONCLUSION
When interpreting insurance contracts, standard contract laws apply. Tom Thomas erroneously refused to read the parties’ unambiguous contract as written and, for this reason, has been overruled. Because the contract in this case unambiguously and not unreasonably required suit to be filed within one year of the accident, defendant properly denied the claim when plaintiff failed to meet that deadline. Standard contract doctrines remain, and waiver or estoppel may be applied if the facts support it. Plaintiff has not shown any reliance on the conduct of or statements by defendant, however, so estoppel does not reheve plaintiff of the duty to timely file suit. We reverse the judgment of the Court of Appeals and remand this matter to the trial court for entry of summary disposition in favor of defendant.
Corrigan, Young, and Markman, JJ., concurred with Taylor, C.J.

 In her brief and in her opposition to defendant’s trial court motion for summary disposition, plaintiff argued that the written permission, dated August 14, 2002, was later revoked in a telephone conversation on August 16, 2002. However, plaintiffs counsel in oral argument before this Court conceded that the August 14 date on the letter was incorrect. The record indicates that the date was a clerical error; the letter should have been dated August 24, 2002. Thus, there is no dispute that written permission to settle was given and not revoked.

 OFIS is now the Office of Financial and Insurance Regulation, effective April 6, 2008. Executive Order No. 2008-2.

 OFIS issued a similar order specifically addressing underinsured motorist benefits on April 4, 2006.

 Justice Kelly asserts that a claim of waiver or estoppel requires “ ‘wider ranging investigation and proof ” than a claim that judicial tolling applies. Post at 213, quoting 17 Couch, Insurance, 3d, § 238:1, pp 238-8 to 238-9. However, the difficulty of proving waiver or estoppel is immaterial to the question whether the law, as agreed to by the parties themselves, requires enforcement of the one-year provision. It is not for this Court to conjure up new laws whenever we believe that such might be more favorable to one party or another.