*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GREEN SKIES HEALING TREE, LLC,

        Plaintiff-Appellant,

UNPUBLISHED
January 20, 2022

v

No. 355574
Genesee Circuit Court
LC No. 20-114722-AA

FLINT ZONING BOARD OF APPEALS,

        Defendant-Appellee,

Before: O'BRIEN, P.J., and STEPHENS and LETICA, JJ.

PER CURIAM.

Plaintiff appeals by leave granted[1] the circuit court order denying leave to file a late appeal of the decision by defendant, Flint Zoning Board of Appeals (ZBA), affirming the city planning commission's denial of a variance. We reverse and remand for proceedings consistent with this opinion.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff owns and operates a state-licensed medical marihuana business in Flint, Michigan. In March 2020, plaintiff requested a use variance from the city of Flint's Planning Commission (FPC) to expand its business to sell recreational marihuana. The FPC denied plaintiff's request for multiple reasons, but primarily expressed its concern about residential proximity to plaintiff's business. On May 19, 2020, defendant's board members and city staff conducted a board meeting remotely over Zoom. At this meeting, plaintiff petitioned defendant to overturn the FPC's decision and "grant the special land-use request." Specifically, plaintiff's counsel, store manager, and director of operations addressed the nature of the surrounding area, the size of the business, available parking, the potential increase in traffic, and anticipated revenue growth as a result of the addition of recreational sales. Defendant's board members heard plaintiff's representatives speak

---

[1] *Green Skies Healing Tree, LLC v Flint Zoning Bd of Appeals*, unpublished order of the Court of Appeals, entered March 3, 2021 (Docket No. 355574).

and answer questions as well as commentary from members of the public. At the conclusion of the hearing on the issue, defendant's voting board members unanimously denied plaintiff's request. The factors considered included that the property was not zoned for "Group E Marihuana Facility Use," and the approval of the variance would permit an adult use retail facility within 300 feet of a residential zoning district.

In the weeks after defendant's decision, plaintiff's counsel contacted the city's director of planning and development, Suzanne Wilcox, on several occasions by e-mail, requesting the minutes for the May 2020 meeting, indicating the minutes were needed to file an appeal, and noting that his previous attempts to obtain the minutes were unsuccessful. Specifically, on June 5, 2020, plaintiff's counsel advised that he was having "a very difficult time" getting a copy of the ZBA denial order from anyone associated with the city despite searching its website and contacting various individuals, without receiving a response. He requested that Wilcox assist him in locating the correct contact person or forward his request to the correct person. Plaintiff's counsel explained that the appeal deadlines were contingent upon the ZBA's written denial order and expressed concern that the order would be published without notice to plaintiff. That same day, Wilcox e-mailed her response, advising that nothing had been provided to plaintiff yet, the "minutes from that meeting ha[d] not yet been made available," but defendant would issue a notification to plaintiff shortly.

Plaintiff's counsel sent correspondence to Wilcox on June 17, 2020, June 23, 2020, and June 24, 2020, again seeking a status update on the ZBA denial order or meeting minutes. In this correspondence, plaintiff's counsel also inquired about filing a formal notice of appearance on behalf of plaintiff to ensure that he received a copy of the ZBA denial order when published. Additionally, plaintiff's counsel inquired about how to renew the existing licensing for plaintiff. On June 24, 2020, city employee, William Vandercook, spoke with plaintiff's counsel. Plaintiff's counsel apparently apprised Vandercook that he needed the approved meeting minutes. However, Vandercook advised plaintiff's counsel that defendant had not met since April 21, 2020. He nonetheless notified plaintiff's counsel that "we would send him a copy [of the meeting minutes] after they are approved by the board." Vandercook memorialized his conversation with plaintiff's counsel in an e-mail to Wilcox, and plaintiff's counsel was also a recipient of this e-mail.

On July 6, 2020, and July 20, 2020, plaintiff's counsel e-mailed Vandercook seeking a status update regarding the ZBA meetings or approval of the meeting minutes denying plaintiff's variance. Additionally, on July 20, 2020, plaintiff's counsel e-mailed Wilcox, requesting an update on the license renewal and noting that the last contact on the matter was a month ago. On July 28, 2020, plaintiff's counsel again e-mailed Wilcox seeking the meeting minutes of the ZBA denial of the variance as well as renewal forms required for continued state licensing. It was noted that it was over a month since defendant's representatives responded to plaintiff. Further, plaintiff's counsel asked, "Are you all intentionally ignoring my e[-]mails?" That same day, Wilcox responded, indicating defendant only approved minutes during its scheduled meetings, had not met since the "last meeting," and had no July meetings scheduled. Wilcox offered to send plaintiff a copy of the draft minutes, but noted that they would not be the official minutes "until

the ZBA approves them." In reply, plaintiff's counsel requested more information regarding the state license renewal process, but did not request a copy of the draft minutes.[2]

On August 18, 2020, defendant approved the minutes of its May 19, 2020 meeting at which it denied plaintiff's request for the variance. Despite the prior representations, defendant's board members or city employees did not give notice of the approval to plaintiff or send a copy of the approved minutes to plaintiff's counsel within 21 days. Rather, on September 15, 2020, plaintiff's counsel learned from Vandercook, for the first time, that defendant approved the aforementioned minutes on August 18, 2020.

Plaintiff filed its claim of appeal from the ZBA decision on September 15, 2020, 28 days after the minutes were approved on August 18, 2020, and seven days after the 21-day deadline for filing had expired. The appeal alleged defendant's denial of its requested variance was erroneous because the decision violated due process, applied the incorrect standard of review, was not supported by competent and material evidence, and failed to comply with the city's own ordinances. Plaintiff acknowledged that its appeal was untimely filed, but sought leave to file a late appeal, contending that defendant intentionally and negligently failed to provide the minutes to plaintiff, despite advising that defendant's representatives would send the minutes to plaintiff "upon their publication." Plaintiff submitted that the trial court had the equitable authority to consider plaintiff's appeal as timely filed in light of the COVID-19 pandemic's impact on defendant's regular meeting schedule, defendant's knowledge of plaintiff's desire to perfect a timely appeal, and defendant's complete failure to notify plaintiff of the meeting minutes approval. Further, plaintiff alleged that defendant was not prejudiced by the seven-day delay in filing the claim of appeal. Indeed, defendant did not dispute that plaintiff had made multiple requests for the approved minutes, did not dispute that defendant's agents represented that they would send to plaintiff a copy of the meeting minutes upon approval, and had no objection to the late appeal.

Citing *Quality Market v Detroit Zoning Bd of Appeals*, 331 Mich App 388; 952 NW2d 603 (2019), the trial court denied plaintiff's motion for leave to file a late appeal, concluding that MCL 125.3606(3) did not authorize a late appeal under MCR 7.105(G). The trial court also acknowledged that "the Covid-19 pandemic may be a reasonable explanation here for the delay in the notification of the approval of the meeting minutes, it does not rise to the level here of 'unusual circumstances' that would allow the [trial] [c]ourt to employ its equitable powers[.]" The trial court also denied plaintiff's motion for reconsideration. As noted, we granted plaintiff's application for leave to appeal.

## II. ANALYSIS

Plaintiff contends the trial court erred in failing to find unusual circumstances which warranted application of equitable estoppel to permit plaintiff's untimely appeal. We agree.

---

[2] In an exchange of e-mails, city attorney Kelly Thompson notified plaintiff of the information necessary for the state license renewal issue and indicated the effects of the COVID-19 pandemic had caused delays and "displaced" city employees.

"This Court reviews de novo questions of law in zoning cases." *Quality Market*, 331 Mich App at 392. This Court also reviews de novo whether the trial court properly interpreted and applied the relevant statutes. *Id.* at 393. Further, "[w]hen reviewing a grant of equitable relief, an appellate court will set aside a trial court's factual findings only if they are clearly erroneous, but whether equitable relief is proper under those facts is a question of law that an appellate court reviews de novo." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008).

In general, "[a]n appeal to the circuit court of a zoning board decision must be taken within the time allotted by statute." *Quality Market*, 331 Mich App at 393.[3] In this case, the applicable statute, MCL 125.3606(3), requires an appeal from a decision of a zoning board of appeals be filed within whichever of the following deadlines comes first:

(a) Thirty days after the zoning board of appeals issues its decision in writing signed by the chairperson, if there is a chairperson, or signed by the members of the zoning board of appeals, if there is no chairperson.

(b) Twenty-one days after the zoning board of appeals approves the minutes of its decision.

"The time limit for filing an appeal in the circuit court is jurisdictional; a circuit court lacks jurisdiction over an untimely filed claim of appeal." *Quality Market*, 331 Mich App at 393. While "MCR 7.103(B)(4) provides that the circuit court may grant leave to appeal from a final order or decision of an agency if an appeal of right was not timely filed and a statute authorizes a late appeal[,] . . . [t]he latter requirement was lacking in that MCL 125.3606(3) does not authorize an appeal by leave granted or a late appeal." *Quality Market*, 331 Mich App at 395; MCL 7.103(B)(4).

Michigan courts undoubtedly possess equitable power to extend statutory deadlines although such power has traditionally been reserved for unusual circumstances such as fraud or mutual mistake. *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 590; 702 NW2d 539 (2005); *Cincinnati Ins Co v Citizens Ins Co*, 454 Mich 263, 270; 562 NW2d 648 (1997). The doctrine of equitable estoppel is a judicially created exception to the general rule that statutory deadlines run without interruption. *Cincinnati Ins Co*, 454 Mich at 270.

One who seeks to invoke the doctrine generally must establish that there has been (1) a false representation or concealment of a material fact, (2) an expectation that the other party will rely on the misconduct, and (3) knowledge of the actual facts on the part of the representing or concealing party. This Court has been reluctant to recognize an estoppel absent intentional or negligent conduct designed to induce a plaintiff to refrain from bringing a timely action. Negotiations intended to

---

[3] The authority of local units of government "to regulate land and use through zoning" derives from the Michigan Zoning Enabling Act (MZEA), MCL 125.3101 *et seq*. *Olsen v Chikaming Twp*, 325 Mich App 170, 179; 924 NW2d 889 (2018).

> forestall bringing an action have been considered an inducement sufficient to invoke the doctrine, however. [*Id*. (citation omitted).]

Additionally, "[w]hen a person voluntarily assumes a duty not otherwise imposed by law, that person is required to perform it carefully, not omitting to do what an ordinarily prudent person would do in accomplishing the task." *Zine v Chrysler Corp*, 236 Mich App 261, 277; 600 NW2d 384 (1999) (citation and quotation marks omitted).

In *Cincinnati Ins Co*, a driver drove his vehicle into a building, causing damage. The building was insured by the plaintiff insurance company. The plaintiff's claim adjuster was in the process of determining damages for contents loss and business interruption loss. However, the defendant, the driver's insurance company, apprised the plaintiff that it preferred to address the entire claim at once, rather than piecemeal, and did not raise a statute of limitations defense. Thus, the plaintiff acted in good faith, for the convenience of and at the request of the defendant, by deferring its demand for payment until the entire loss was calculated. Further, the plaintiff's representative documented its communications with the defendant, and the defendant did not dispute the content of their understanding. *Id*. at 264-267, 270-272. Because the contents loss claim was timely submitted and the parties agreed to the processing of the entire claim at once, the defendant was estopped from seeking to bar the plaintiff's claim as untimely. *Id*. at 272-273.

Under the facts and circumstances presented in this case, we conclude that the trial court clearly erred in declining to hold that unusual circumstances existed that warranted the application of estoppel to permit plaintiff's late appeal. First, defendant was no longer operating in its usual manner because of the COVID-19 pandemic. Indeed, defendant's board members were no longer conducting in-person and regularly scheduled meetings. Consequently, when plaintiff's counsel attempted to learn when the meeting minutes would be approved, he was never given a definitive date. Additionally, plaintiff's e-mails to city employees repeatedly went unanswered. After continuing to contact various representatives, plaintiff's counsel received responses from Wilcox and Vandercook. Both individuals advised that approval of the meeting minutes had not occurred and that each would notify or submit a copy of the approval to plaintiff's counsel. Indeed, plaintiff's counsel requested that a notice of his appearance be placed on file to ensure his receipt of the meeting minutes.

Instead of timely submitting the meeting minutes to plaintiff in accordance with the representations, plaintiff was not made aware of the approval until the time for filing the claim of appeal had passed. Plaintiff's counsel was given this information from Vandercook. Additionally, defendant did not oppose the circuit court's acceptance of the late appeal, did not file an answer to plaintiff's application for leave to appeal with this Court, and did not file an appellee brief in opposition. A review of the record indicates the circuit court concluded it would not engage its equitable authority because MCL 125.3606 did not require defendant to provide plaintiff with a copy of the approved minutes and the challenges of the COVID-19 pandemic, by itself, did not rise to level of unusual circumstances. However, defendant's regularly scheduled in-person meetings were suspended, and the meeting minutes were traditionally approved at those meetings. Thus, plaintiff was unable to determine when the meeting minutes would be approved. Further, defendant failed to dispute that plaintiff made repeated requests for the minutes, did not object to plaintiff's motion to file a late appeal, and did not dispute plaintiff's factual allegations regarding the representations made by defendant's agents. The record indicates plaintiff attempted to obtain

a copy of the minutes for appeal purposes during the height of the COVID-19 pandemic when defendant experienced difficulty in holding regular meetings and operating as it normally would. From Wilcox's and Vandercook's correspondence with plaintiff, defendant intended to assist plaintiff in obtaining the approved minutes to timely file an appeal, but for unknown reasons failed to do so. Thus, defendant's representatives' promise to notify plaintiff of the approval of the meeting minutes constituted an assumption of a voluntary duty because no statute required defendant, or its employees, to give such notice. Plaintiff repeatedly informed defendant's employees that notice of when the minutes were approved was crucial to its ability to file an appeal. Accordingly, an ordinarily prudent person that volunteered to notify plaintiff when the minutes were approved would have given such notice in a timely manner, and not a month later. *Zine*, 236 Mich App at 277. Because defendant's employees indicated they would notify plaintiff when the minutes were approved, plaintiff's counsel relied on this promise and ceased its repetitive contacts with defendant's representatives.

We conclude that plaintiff reasonably relied on defendant's promise to notify it when the minutes were approved. Further, because defendant concedes that plaintiff's mere seven-day late appeal does not create any significant prejudice, the trial court should have allowed plaintiff's motion to file a late appeal. Consequently, the trial court erred in failing to apply its equitable power to expand the statutory time limit to file an appeal from defendant's decision in light of the unusual circumstances presented.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff, as the prevailing party, may tax costs.


/s/ Colleen A. O'Brien
/s/ Cynthia Diane Stephens
/s/ Anica Letica